IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ANTHONY M. SMALLS, #267031 *

v. * CIVIL NO. CCB-12-3571

J. MICHAEL STOUFFER *

*****

**MEMORANDUM**

Anthony M. Smalls ("Smalls") filed a 42 U.S.C. § 1983 complaint for declaratory, injunctive, and monetary relief on December 3, 2012. Smalls claims that his right of access to the courts was violated due to his confinement on segregation at the North Branch Correctional Institution ("NBCI"); he alleges that he was denied access to the prison law library, "causing him to suffer an actual injury." (ECF No. 1 at 2.) He contends that two civil actions filed in the District of Kansas[1] were dismissed because he could not adequately litigate them while confined in Maryland. (*Id.*) He also argues that he could not properly appeal the Maryland circuit court denial of his motion to reopen his state post-conviction petition because he could not access the law library.[2] (*Id.*

---

[1] The PACER docket of federal court cases shows that, while confined in Leavenworth, Kansas, Smalls filed *Smalls v. Stermer, et al.*, Civil Action No. 10-3025-SAC (D. Kan.). That case alleged violations of the terms of contracts entered between the federal government and the State of Maryland to provide adequate housing for Maryland inmates. The record shows that after Smalls' transfer back to Maryland in 2010, he filed multiple non-dispositive and dispositive motions, many containing legal citations. (*Id.* at ECF Nos. 50, 53-54, 59-63, 66, 73, 75, 78, 84-85, 87-89, 92, 94, 103, 110, 112, 114, 116, & 120.) That case was dismissed on March 31, 2011, and judgment was entered on April 14, 2011. The second federal complaint filed by Smalls in the District of Kansas was submitted on August 19, 2011, after he had been returned to Maryland confinement. It alleged a denial of access to courts while Smalls was incarcerated in Kansas. *See Smalls v. Richardson, et al.*, Civil Action No. 11-3150-SAC (D. Kan.). Again, Smalls filed many motions, responses, and declarations. (*Id.* at ECF Nos. 5-6, 8, 11-12, 17-18, 23-24, 26, 29-33, 37-39, 42, 44-51, & 53-54.) On September 25, 2012, U.S. District Judge Sam A. Crow dismissed the case.

[2] On April 9, 2013, the court received Smalls' "memorandum of law in support of complaint," construed as a supplemental complaint. (ECF No. 14.) In that pleading, Smalls alleges that the defendant did nothing to prevent his placement in segregation housing and could have taken him off segregation, sent him out of state, or placed him in protective custody. (*Id.* at 4.)

at 4-5.)

J. Michael Stouffer ("Stouffer") filed a motion to dismiss or, in the alternative, motion for summary judgment. (ECF No. 26.) Smalls then filed a motion for reconsideration, declarations in opposition, a motion to hold a hearing, and a motion for appointment of counsel. (ECF Nos. 29, 30, 32-34, 37, 39, & 41.)

Because Stouffer filed and relied on three separate declarations attached to his dispositive motion, it shall be treated as a summary judgment motion due to its reliance on materials filed outside the scope of the pleadings. For the following reasons, Stouffer's dispositive motion will be granted without a hearing. *See* Local R. 105.6. (D. Md. 2011).

## BACKGROUND

The only named defendant is Stouffer, the Deputy Secretary of the Maryland Department of Public Safety and Correctional Services ("DPSCS"). He affirms by declaration that he had no role in deciding which Maryland inmates would be housed in Kansas or in the day-to-day administration of NBCI.[3] (*See* ECF No. 26, Ex. A at ¶¶ 3-4, 7.) Accordingly, Stouffer argues that he cannot be found liable under a respondeat superior theory.

Stouffer further asserts that Smalls' claim cannot proceed because he did not fully exhaust his administrative remedies. An administrative remedy procedure ("ARP") grievance was filed regarding Smalls' segregation assignment in November 2012. (ECF No. 1, Ex. 1 at 5.) Stouffer affirms, through the declaration of the Inmate Grievance Office ("IGO") Executive Director, that Smalls neither appealed the dismissal of his ARP nor filed a grievance with the IGO concerning the

---

[3] Smalls' federal litigation in Kansas reveals that he was likely one of forty-eight Maryland inmates transferred into the custody of the federal government pursuant to an Intergovernmental Agreement between the United States Marshal and DPSCS. (*See Smalls v. Stermer, et al.*, Civil Action No. 10-3025-

denial of legal materials or access to the courts. (*See* ECF No. 26, Ex. B at ¶ 3.)

Stouffer additionally alleges that Smalls did not demonstrate that his right of access to the courts was violated as NBCI segregation inmates may submit requests and are provided copies of legal materials from the library. Finally, Stouffer claims, through the declaration of the IGO Coordinator at NBCI, that incoming and outgoing legal mail at NBCI is processed in accordance with agency policies and directives and Smalls' mail was processed in compliance with those policies. (ECF No. 26, Ex. C at ¶¶ 7-8.)

Smalls opposes Stouffer's responsive pleading, arguing that he "has proven that exhaustion of remedies were not available to exhaust."[4] (ECF No. 33 at 1.) He further claims that Stouffer is liable for segregation housing that deprives him access to the court. Smalls also seemingly claims that Stouffer is liable for his subordinates' misconduct in subjecting him to segregation housing as he exerts "ultimate" authority over the Maryland prisons. (ECF No. 29 at 9.) He additionally claims that Stouffer was cognizant of his claims due to Smalls' prior litigation and that Stouffer's declaration indicates he was aware of plaintiff's allegations. Finally, Smalls asserts that it would take longer than the thirty-day period given for appeal to obtain legal materials and appeal the denial of his motion to reopen state post-conviction proceedings.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(a) provides that summary judgment should be granted "if the movant shows that there is no *genuine* dispute as to any *material* fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) (emphasis added). Whether a fact is material depends upon the substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

---

SAC (D. Kan.), ECF No. 56 at 2.)
[4] In other words, Smalls claims there was no available remedy to exhaust. (ECF No. 29 at 8.) According to Smalls, the ARP process is not available for grieving case management decisions. (ECF

247–48 (1986). Accordingly, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Id.* "A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court must view the evidence in the light most favorable to the nonmovant and draw all justifiable inferences in his favor. *Scott v. Harris*, 550 U.S. 372, 378 (2007) (citation omitted); *see also Greater Baltimore Ctr. for Pregnancy Concerns, Inc. v. Mayor and City Council of Baltimore*, 721 F.3d 264, 283 (4th Cir. 2013) (citation omitted). At the same time, the court must not yield its obligation "to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (citation and internal quotation marks omitted).

## ANALYSIS

There is no allegation or showing that Stouffer was personally involved with, or had any direct role in, Smalls' assignment to segregation, his transfer to Kansas, or the processing of legal mail and research requests to the NBCI library. Further, the Fourth Circuit has set forth three elements necessary to establish supervisory liability in Section 1983 cases: "(1) [] the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed 'a pervasive and unreasonable risk' of constitutional injury to . . . the plaintiff; (2) [] the supervisor's response to that knowledge was so inadequate as to show 'deliberate indifference to or tacit authorization of the alleged offensive practices,'; [sic] and (3) [] there was an 'affirmative causal link' between the supervisor's inaction and the particular constitutional injury suffered by the

No. 33 at 9.)

plaintiff." *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994). "Establishing a 'pervasive' and 'unreasonable' risk of harm requires evidence that the conduct is widespread, or at least has been used on several different occasions and that the conduct . . . poses an unreasonable risk of . . . constitutional injury." *Id.* There is no evidence showing that an unconstitutional policy or practice was used as a routine control measure at NBCI or other Maryland prisons. Smalls has similarly provided no evidence demonstrating supervisory liability on the part of Stouffer. The complaint against Stouffer is therefore subject to dismissal. *See Clark v. Maryland Dep't of Pub. Safety and Corr. Servs.*, 316 Fed. App'x 279, 282 (4th Cir. 2009) (administrators are liable "only for their personal wrongdoing or supervisory actions that violated constitutional norms").[5]

Moreover, according to the declaration of IGO Executive Director Scott S. Oakley, Smalls filed grievances with the IGO in 1998 and 2011. (ECF No. 26, Ex. B at ¶ 3.) He also filed an ARP at the institutional level on November 5, 2012, concerning his "unsafe, unproductive and inappropriate" assignment on NBCI segregation. (ECF No. 1, Attachment at 5-9.) Oakley affirms that Smalls did not appeal his ARP after the Warden's disposition. (ECF No. 26, Ex. B at ¶ 3.)

The Prison Litigation Reform Act of 1995 ("PLRA") provides: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); *see also Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008). Exhaustion is mandatory, and unexhausted claims may not be brought in court. *See Jones v. Bock*, 549 U.S. 199, 211 (2007). The phrase "prison conditions," found in § 1997e(a), encompasses "all inmate suits about prison life, whether they involve general circumstances or

---

[5] Unpublished opinions are for the soundness of their reasoning, not for any precedential value.

particular episodes, and whether they allege excessive force or some other wrong." *See Porter v. Nussle*, 534 U.S. 516, 519-20, 532 (2002).

Proper exhaustion of administrative remedies "demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). Thus, the failure to exhaust administrative remedies is an affirmative defense to be pleaded and proven by the defense. *See Bock*, 549 U.S. at 215-16; *Anderson v. XYZ Corr. Health Servs., Inc.*, 407 F.3d 674, 682 (4th Cir. 2005). Indeed, a district court may, *sua sponte*, "dismiss[] a complaint where the failure to exhaust is apparent from the face of the complaint," as long as the inmate is provided the "opportunity to respond to the issue" prior to dismissal. *Anderson*, 407 F.3d at 683.

In the Maryland correctional system, if the prison in which an inmate is incarcerated provides an ARP, the inmate must complete the ARP process as a condition precedent to further review. *See generally* Md. Code Ann., Corr. Servs. §§ 10-201 to 10-210; COMAR 12.07.01.02.D. Filing an ARP with the Warden of the prison in which one is incarcerated is the first of three steps in the ARP process provided by the Division of Correction to its prisoners. *See Evans v. State*, 914 A.2d 25, 69 (Md. 2006). If this request is denied, the prisoner has ten calendar days to file an appeal with the Commissioner of Correction. *Id.* Thereafter, the inmate may request further review by submission of a complaint to the IGO, within thirty days. *See* COMAR 12.07.01.05.B; *see also* Md. Code Ann., Corr. Servs. § 10-206. Complaints are reviewed preliminarily by the IGO, *see id.* § 10-207; COMAR 12.07.01.06, and, if a hearing is deemed necessary by the IGO, the hearing is conducted by an administrative law judge ("ALJ") in the Maryland Office of Administrative Hearings. *See* Md. Code Ann., Corr. Servs. § 10-208; COMAR 12.07.01.07-.08.

A decision of the ALJ denying all relief to the inmate is considered a final agency determination. *See* Md. Code Ann., Corr. Servs. § 10-209(b)(1). A decision concluding that the inmate's complaint is wholly or partly meritorious, however, constitutes a recommendation to the Secretary of DPSCS, who must make a final agency determination within fifteen days after receipt of the proposed decision of the ALJ. *See id.* § 10-209(b)-(c). In either event, the final agency determination is subject to judicial review in Maryland state court. *See id.* § 10-210.

Smalls' access-to-courts claim falls under the exhaustion requirement of § 1997e(a), and must be dismissed unless he can show that he has satisfied the administrative exhaustion requirement or that Stouffer has forfeited his right to raise non-exhaustion as a defense. *See Chase v. Peay*, 286 F. Supp. 2d 523, 528 (D. Md. 2003). Smalls does not adequately explain his failure to exhaust administrative remedies regarding his access-to-courts claim. He had access to the ARP grievance process, as demonstrated by his filing of a grievance in November 2012. Aside from his conclusory claim that he was somehow impeded in filing an ARP, he has failed to show how prison personnel impeded him from exhausting his access-to-courts claim, which is reviewable under the Maryland ARP process. Thus, Smalls' claim must be dismissed for non-exhaustion.

Moreover, even if the court reviewed Smalls' Fourteenth Amendment access-to-courts claim, he failed to prove a violation. Prisoners have a constitutionally protected right of access to the courts. *See Bounds v. Smith*, 430 U. S. 817, 821 (1977). Nevertheless:

> *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any *other* litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

*Lewis v. Casey*, 518 U. S. 343, 355 (1996) (emphasis in original).

7

To the extent that Smalls claims that his housing on segregation made it impossible for him to pursue his civil cases, he has shown no harm from that alleged deprivation. A prisoner attempting to demonstrate a Fourteenth Amendment burden on his access to the courts "must show 'actual injury' to 'the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts.'" *O'Dell v. Netherland*, 112 F.3d 773, 776 (4th Cir. 1997) (citation omitted). "The requirement that an inmate alleging a violation of *Bounds* must show actual injury derives ultimately from the doctrine of standing, a constitutional principle that prevents courts of law from undertaking tasks assigned to the political branches." *Lewis*, 518 U.S. at 349. The federal dockets show that Smalls was able to file numerous non-dispositive motions, dispositive motions (with legal citations), declarations, and reports in his civil rights cases both here and in the District of Kansas. It is disingenuous for Smalls to argue he was impeded in pursuing his federal litigation. Further, Smalls has failed to demonstrate that his alleged inability to obtain research material rendered it impossible for him to appeal the denial of his motion to reopen his state post-conviction petition.[6]

## CONCLUSION

As Smalls has failed to show personal or supervisory liability on the part of Stouffer, exhaustion of his administrative remedies, or a violation of his Fourteenth Amendment rights, Stouffer is entitled to summary judgment. For this reason, Smalls' motions for reconsideration, to

---

[6] Smalls' attachment shows that the circuit court denied the motion to reopen, finding that it was not in the interests of justice to reopen the case. (ECF No. 1, Ex. 1 at 4.)

deny Stouffer's motion to dismiss, to hold a hearing, and for appointment of counsel shall be denied, and judgment shall be entered in favor of Stouffer. A separate Order follows.

October 24, 2013                           _____/s/_____
Date                                             Catherine C. Blake
                                                      United States District Judge